USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/20/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES,

-against-

BILLYHENS NUNEZ-POLANCO,

                  Defendant.

11 Crim. 522 (SHS)

---

BILLYHENS NUNEZ-POLANCO,

                  Petitioner,

-against-

UNITED STATES,

                  Respondent.

13 Civ. 3263 (SHS)

<u>OPINION & ORDER</u>

---

SIDNEY H. STEIN, U.S. District Judge.

    Pursuant to 28 U.S.C. § 2255, petitioner Billyhens Nunez-Polanco moves to vacate his convictions for (1) conspiracy to distribute and possess with intent to distribute heroin and (2) possession with intent to distribute heroin, on the grounds that his trial counsel was ineffective. Nunez-Polanco's petition for relief is denied because he has not demonstrated that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result.

I. BACKGROUND

    The history of the case is as follows. Nunez-Polanco was arrested after a police officer observed, through a peephole in the exterior door, Nunez-Polanco and three other men packaging heroin inside a Yonkers apartment. (Trial Tr. 34, 36, 42–45, 57.) The Court appointed Ronald Garnett, Esq. to represent Nunez-Polanco. At his 2012 trial, Nunez-Polanco took the stand and testified under oath that although he had accompanied a friend to the apartment, he had not participated in the packaging and in fact had not even seen any drugs in the apartment. (*Id.* 595–600.) The jury,

apparently not crediting Nunez-Polanco's testimony, returned a verdict of guilty.

Subsequent to being convicted and remanded to incarceration pending sentence, Nunez-Polanco participated in a so-called "safety valve" proffer session with the government pursuant to 18 U.S.C. § 3553(f). (Am. Pet. Under 28 U.S.C. § 2255 at 7.) During that meeting, he told the government that he had in fact gone to the apartment with the intention of packaging drugs, but that no work remained for him by the time he arrived. (Hr'g Tr. 35.) At sentencing, Garnett informed the Court that the defense and the prosecution agreed that Nunez-Polanco was not eligible for safety valve relief. (Sentencing Tr. 2, Oct. 16, 2012.) This Court then sentenced him principally to the mandatory minimum sentence of 60 months incarceration. (*Id.* at 20.) Nunez-Polanco did not appeal from that sentence.

In his first pro se section 2255 petition, filed May 13, 2013, Nunez-Polanco alleged that Garnett was ineffective in three respects, as follows: (1) Garnett had neglected to file a notice of appeal after Nunez-Polanco had directed him to do so; (2) Garnett should have made a pretrial request that the jury visit the Yonkers apartment and inspect the peephole to determine for themselves what could be seen through it; and (3) Garnett had failed to effectively cross-examine the government's three cooperating witnesses at trial. (*See* Mot. Under 28 U.S.C. § 2255 at 5–6.) Nunez-Polanco subsequently obtained representation and filed an amended petition, which alleged two additional grounds for relief: (1) Garnett had failed to convey two plea offers to Nunez-Polanco and to counsel him adequately regarding those offers; and (2) Garnett had failed to counsel and represent Nunez-Polanco adequately during the sentencing phase of the representation. (*See* Am. Pet. 1.)

The Court held a two-day factual hearing on February 14 and 19, 2014, during which both Nunez-Polanco and Garnett testified and each was subject to vigorous cross-examination. At the hearing, again under oath, Nunez-Polanco admitted that he had indeed told Garnett that he had not packaged heroin in the apartment and that he had not seen drugs there; that he had testified falsely at his trial; and that he had provided false

2

information to the government at the safety valve proffer. (Hr'g Tr. 5, 7, 12–14, 35, 53–55.)

## II. DISCUSSION

### A. Legal Standard

28 U.S.C. § 2255 directs the Court to vacate, set aside, or correct a sentence if it finds that there has been "such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Pursuant to *Strickland v. Washington's* two-prong test for ineffective assistance of counsel, a habeas petitioner must prove that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Cox v. Donnelly*, 387 F.3d 193, 198 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). Based on the evidence adduced at the hearing, the Court concludes that there is no merit to any of the five bases for relief that Nunez-Polanco has identified.

### B. Counsel Did Not Act Unreasonably by Not Filing a Notice of Appeal

Petitioner alleges first that Garnett failed to file a notice of appeal after he instructed him to do so. At the hearing, Nunez-Polanco testified that "I told him I wanted to appeal, and he asked me whether I was sure, and I said that I was." (Hr'g Tr. 38.) If this were true, the Court would be required to find Garnett's representation constitutionally ineffective. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Campusano v. United States*, 442 F.3d 770, 771–72 (2d Cir. 2006).

The Court, however, credits Garnett's testimony that Nunez-Polanco told him that "he did not wish to appeal." (Hr'g Tr. 133.) As corroborated by his billing records and handwritten meeting notes, Garnett testified that he visited Nunez-Polanco after his sentencing to discuss his appeal rights and possible grounds for appeal, and that his client had decided not to

appeal. (Hr'g Tr. 133–34; Gov't Ex. 20.) He testified that at no time did Nunez-Polanco "communicate to [me] a desire to file a notice of appeal." (Hr'g Tr. 140.) Garnett also stated that Nunez-Polanco's family members never informed him that they wanted him to file an appeal. (*Id.* at 140–41.) The only evidence Nunez-Polanco can point to is his own testimony. In light of petitioner's history of admittedly making false statements in judicial proceedings and his demeanor on the stand, the Court credits Garnett's testimony, as supported by his notes and billing records, that Nunez-Polanco never directed him to file an appeal.

### C. Counsel's Decision Not to Request a Site Visit Prior to Trial Was Neither Objectively Unreasonable Nor Prejudicial

Second, Nunez-Polanco contends that Garnett's representation was ineffective because he did not make a pretrial request that the jury visit the Yonkers apartment and inspect the peephole to determine what could be seen of the apartment by looking through it. (Mot. Under 28 U.S.C. § 2255 at 5.) At a side bar conference on the fourth day of the trial, near the conclusion of the presentation of the evidence, Garnett inquired into the possibility of a site visit. (Trial Tr. 531.) The Court denied the request, noting that it might have considered it had Garnett presented the issue earlier. (*Id.*) Garnett later wrote in his sentencing submission that he "failed" his client by not requesting a site visit prior to trial. (Sentencing Mem. 3, Oct. 3, 2012.) Nunez-Polanco argues that had the jury inspected the peephole, they would have discredited the officer's testimony that he looked through the peephole and saw Nunez-Polanco packaging drugs. (Pet'r's Pro Se Mem. of Law 2.)

In spite of Garnett's post-trial regret, Nunez-Polanco has not established that Garnett's failure to make a pretrial request for a site visit was objectively unreasonable. Site visits are often fraught with risk. Here, for example, the government had introduced into evidence a photograph taken through the peephole; it depicted a person standing inside the Yonkers apartment in the same location that the officer claimed to observe Nunez-Polanco and others packaging heroin. (Trial Tr. 45.) The officer testified that his view through the peephole with his naked eye was actually clearer than the view in the photograph. (Trial Tr. 46.) Although the jury's visual inspection of the peephole might have led them to

4

discredit the officer's testimony and the photographic evidence, the opposite result seems equally possible. Indeed, it is not known if the peephole in place at the time of trial had been altered in any way after the officer looked through it on the day of petitioner's arrest. In light of this risk, Garnett did not act in an objectively unreasonable manner by not initially requesting a site visit. Rather, his decision was a strategic choice well within the ambit of counsel's discretion. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (noting that a court may not judge an attorney's choice of strategy with the benefit of hindsight).

Moreover, Nunez-Polanco has not demonstrated that Garnett's delay in requesting a site visit prejudiced him. Garnett cross-examined the officer on his view of the apartment through the peephole and the photographs that were taken (Trial Tr. 151–54), and Nunez-Polanco has not alleged that this cross-examination was less effective than a site visit would have been. More importantly, the testimony of the cooperating witnesses convincingly placed Nunez-Polanco solidly in the narcotics conspiracy. Given the weight of that evidence, petitioner has not shown that the outcome of the trial would have been different had the jury visited the apartment and looked through the peephole.

### D. Counsel Adequately Cross-Examined Cooperating Witnesses

Third, Nunez-Polanco argues that Garnett provided ineffective assistance due to his allegedly inadequate cross-examination of the three cooperating witnesses who testified at trial. (Mot. Under 28 U.S.C. § 2255 at 5; Am. Pet. 1.) Petitioner's claim is without merit. The cross-examinations by both Garnett and the counsel for Nunez-Polanco's codefendant comprise approximately 170 of the 785 pages of the trial transcript. (Trial Tr. 215–69; 275–77; 282–89; 324–72; 378–386; 430–448; 462–84; 490–94.) The attorneys questioned the witnesses about their cooperation agreements, their incentives to lie, their criminal histories, and their deep involvement in the narcotics trade. Their questions were searching and aggressive. Nunez-Polanco has not proven that the cross-examination was deficient, let alone that he suffered any prejudice as a result.

x

### E. Counsel Adequately Communicated Plea Offers

Fourth, petitioner contends that Garnett did not adequately communicate the two plea offers the government extended before trial. The government first offered to accept a plea by Nunez-Polanco to violating 21 U.S.C. § 841(b)(1)(C) (the "first offer" or "(b)(1)(C) offer") at an offense level of 23, which involved no minimum prison sentence. (Am. Pet. 4.) It subsequently offered a plea to 21 U.S.C. § 841(b)(1)(B) (the "second offer" or "(b)(1)(B) offer") at a base offense level of 23, but which carried a five-year mandatory minimum. (*Id.*) Nunez-Polanco testified that Garnett never informed him of the first offer (that is, the (b)(1)(C) offer). (Trial Tr. 22, 41–42.)[1] He admitted that Garnett told him about the second offer (the (b)(1)(B) offer), but argues that Garnett did not specify the terms of the offer and failed to effectively counsel him on the benefits of accepting it. (Hr'g Tr. 27–28; Am. Pet. 5–6.) According to Nunez-Polanco, Garnett told him only that the second plea offer involved "a lot of time." (Hr'g Tr. 27–28, 43.)

#### 1. Legal Standard Governing Ineffective Assistance of Counsel in the Context of Plea Offers

Case law from the United States Supreme Court and the U.S. Court of Appeals for the Second Circuit sheds light on *Strickland's* application to plea offers. With respect to objective reasonableness, attorneys must, at the very least, communicate the terms of a plea offer to their clients. *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010) ("[C]ounsel's failure to convey a plea offer falls below an objective standard of reasonableness and thus satisfies *Strickland's* first prong."); *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999). Defendants are also entitled to "effective assistance of counsel in considering whether to accept" plea offers. *Lafler v. Cooper*, 132

---

[1] In his amended petition, Nunez-Polanco appears to concede that Garnett told him the government had made the (b)(1)(C) offer, but argues that Garnett did not adequately counsel him regarding the benefits of accepting it. (Am. Pet. 4–5, 9–10.) Because Nunez-Polanco testified under oath at the hearing that Garnett never told him about the (b)(1)(C) offer, the Court will analyze that argument for purposes of this opinion.

6

S. Ct. 1376, 1387 (2012). An attorney "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). However, when a client has made "steadfast protestations of innocence," an attorney need not give explicit advice on whether to accept a plea offer, as to do so might risk improper coercion. *Id.* at 46.

In addition, to show prejudice, petitioner must demonstrate that "the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384. In other words, petitioner bears the burden of showing that

> there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

### 2. *Petitioner Has Not Shown that His Attorney Failed to Communicate the Government's Plea Offers or that He Suffered Prejudice*

#### a. *Petitioner Has Not Shown that Counsel Failed to Convey the Plea Offers*

The Court first addresses Nunez-Polanco's argument that Garnett failed to convey the terms of the plea offers. Regarding the (b)(1)(C) offer, the Court finds that Nunez-Polanco has failed to prove that Garnett did not inform him that it had been extended. Although Garnett conceded that he no longer had a specific recollection of discussing the offer with Nunez-Polanco, he stressed that his "general practice" was to promptly inform his clients of plea offers and review with them the indictment, discovery, and applicable statutes and sentencing guidelines. (Hr'g Tr. 68, 102.) Indeed, Garnett testified "my practice is to inform my client of any offer that is made and every offer that is ever made. I don't know of any occasion

where I have not told my client the offer that was made." (Hr'g Tr. 147.) Moreover, Garnett's records contain sufficient circumstantial evidence that he did in fact present the plea offer to Nunez-Polanco. In his note reflecting a conversation with AUSA Tim Howard on December 30, 2011, Garnett referenced a "Govt Offer" and that he "will tell client of this discussion." (Gov't Ex. 1.) Three weeks later, on January 20, 2012, Garnett memorialized a telephone conversation with Howard and AUSA Tim Sini involving a "B-1-C offer – until 1/30"; he also noted that there were "add'l witnesses vs Nunez." (Gov't Ex. 2.) Finally, an email Garnett sent on February 1, 2012 to Howard relates that Garnett spoke with Nunez-Polanco about the offer three days prior, but that his client "continues to assert his innocence." (Gov't Ex. 4.)

In an effort to counteract the evidence that Garnett had discussed the government's (b)(1)(C) offer with him, Nunez-Polanco's counsel at the hearing on this petition pointed to the lack of any calendar entry, billing entry, or handwritten note memorializing any conversation that Garnett initiated with Nunez-Polanco about the (b)(1)(C) offer prior to its expiration on January 30. (Hr'g Tr. 149–51, 156.) Indeed, Garnett had difficulty explaining this absence of documentary evidence at the hearing, stating that he "presum[ed]" he must have seen Nunez-Polanco at the Metropolitan Detention Center on January 30 and discussed the plea offer with him at that time. (Hr'g Tr. 156–57.) However, as his counsel at the hearing pointed out, Nunez-Polanco was on bail at that time. (Hr'g Tr. 158.) Although the Court finds that Garnett was mistaken in his presumption as to where and when he spoke to his client, it finds that Nunez-Polanco has not proven that Garnett never informed him of the (b)(1)(C) offer. In light of Nunez-Polanco's pattern of changing his story, his testimony simply cannot overcome the contrary evidence—the December 30 conversation, the January 20 phone call, and the February 1 email—that exists in the record.

Regarding the second offer—the (b)(1)(B) offer—Nunez-Polanco alleges that Garnett told him of its existence but did not apprise him of its terms. (Hr'g Tr. 27–28; *see also* Am. Pet. 6.) According to Nunez-Polanco, Garnett told him only that the plea offer involved "a lot of time." (Hr'g Tr. 27–28, 43.) Although Garnett did not have a specific recollection of his conversation with Nunez-Polanco regarding the (b)(1)(B) offer at the time

8

of the hearing (*see* Trial Tr. 148–49), the Court finds that Garnett's notes sufficiently reflect that he conveyed the offer's terms to Nunez-Polanco. Garnett's February 16, 2012 note of a telephone call with Tim Howard recites that he had "conveyed offer to client" and "client could not plead guilty." (Gov't Ex. 6; *see also* Gov't Ex. 20 (billing record)). In light of this evidence, the Court finds Nunez-Polanco's testimony to the contrary not credible.

### b. *Counsel's Counseling of Petitioner Regarding the Plea Offers Was Not Objectively Unreasonable*

Nunez-Polanco also alleges that Garnett provided inadequate counseling on whether he should accept the plea offers. (Am. Pet. 9–11.) Specifically, he contends that Garnett did not explain the weight of the government's evidence against him and the advantages of accepting the plea offers. (*Id.* 5–6.) The Court finds that Nunez-Polanco has failed to show that Garnett's conduct fell below an objectively reasonable standard. Garnett testified that he provides all of his clients "with all of the information I get from the government concerning my client's involvement in the case." (Hr'g Tr. 184.) Garnett had also made a note, prior to the expiration of the (b)(1)(C) plea offer, that the government had "add'l witnesses vs Nunez". (Gov't Ex. 2.) On Wednesday, February 1, 2012, Garnett emailed AUSA Howard:

> I did talk to Mr. Nunez Sunday and discussed your last call to me concerning a possible disposition. Most clients want the lawyer to tell them what to do. I do not do that, but discuss options. He continues to assert his innocence, giving credence to being innocently in the wrong place at the wrong time.

(Gov't Ex. 4.) This documentary evidence supports a conclusion that Garnett satisfied his duty to inform his client of the evidence against him and the benefits and drawbacks of accepting the plea offers.

### c. *Petitioner Has Not Demonstrated Prejudice*

Finally, Nunez-Polanco has not demonstrated that he suffered prejudice as a result of Garnett's allegedly deficient communication regarding the two plea offers. As to the (b)(1)(C) offer, the Court declines to credit petitioner's assertion that he would have accepted a plea offer

that did not involve a mandatory minimum sentence. (Hr'g Tr. 25–26; Am. Pet. 5.) Garnett testified that Nunez-Polanco steadfastly insisted on his innocence throughout the course of their relationship (see Hr'g Tr. 127), and Nunez-Polanco testified—falsely—at trial as to his innocence. Even assuming the offer was not transmitted to Nunez-Polanco, the Court finds it unlikely that he would have accepted the plea offer without the benefit of the pellucid hindsight that he enjoys now.

Regarding the (b)(1)(B) offer, petitioner has failed to demonstrate prejudice for two reasons. First, even if Nunez-Polanco could show that Garnett's counseling was inadequate, the Court finds that petitioner was nonetheless aware of the evidence against him and the consequences of a guilty verdict at trial. Petitioner attended a reverse proffer session with the government before it extended the (b)(1)(B) offer, during which it detailed the evidence it would present against Nunez-Polanco at trial. (Am. Pet. 5; see also Hr'g Tr. 90; Gov't Ex. 5a; Gov't Ex. 5b.) Petitioner admits that the government told him at that session that he was facing "more than 13 years" if he lost at trial. (Hr'g Tr. 43.) Petitioner's independent knowledge of the risks of trial therefore cuts against a finding of prejudice.

Second, Nunez-Polanco would not be in a better position even if he had accepted the (b)(1)(B) offer. 21 U.S.C. § 841(b)(1)(B) carries a mandatory minimum sentence of 60 months (absent safety valve relief), the same sentence that Nunez-Polanco ultimately received. The Court therefore finds that even if Nunez-Polanco's allegations that Garnett did not adequately counsel him regarding the (b)(1)(B) offer are true, he has not demonstrated that he suffered prejudice as a result.

### F. Counsel's Representation During the Sentencing Phase Was Neither Unreasonable Nor Prejudicial

Fifth, and finally, Nunez-Polanco argues that Garnett did not adequately counsel him on how to qualify for the "safety valve" set out in 18 U.S.C. § 3553(f), which would have freed him from a mandatory minimum sentence of five years. (Am. Pet. 11–13.) To receive safety valve relief, a defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5).

10

Nunez-Polanco alleges that Garnett never told him about the safety valve prior to the October 12, 2012 court conference prior to sentencing, and that he then failed to advise him on how to qualify for relief under the safety valve. (Hr'g Tr. 34, 49.) The Court declines to credit the first assertion. On October 3, 2012, Garnett submitted a letter to the Court stating that the government had offered, "through counsel," the safety valve opportunity, but that Nunez-Polanco had rejected it because he "would have to . . . implicate himself in the drug conspiracy in this case which he denied joining." (Gov't Ex. 10.) In addition, at the October 12 conference, Garnett informed the Court—in the presence of his client— that he had discussed the safety valve with Nunez-Polanco "several months ago." (Oct. 12, 2012 Conf. Tr. 4; Hr'g Tr. 49–50.) Nunez-Polanco's only evidence that Garnett did not inform him of the government's safety valve offer prior to October 12, 2012 is his hearing testimony, which the Court declines to credit.

The Court also finds no merit in Nunez-Polanco's claim that Garnett failed to advise him adequately on qualifying for safety valve relief. At the close of the October 12 conference, Garnett stated that he needed to "discuss with [Nunez-Polanco] more fully what happened today. . . [H]e's my client and I should give him every opportunity to make his own decision about what to do." (Oct. 12, 2012 Conf. Tr. 9.) Garnett testified that this was the first time petitioner had expressed his desire to participate in the safety valve. (Hr'g Tr. 136.) Garnett's calendar reflects that he visited Nunez-Polanco four days later. (Gov't Ex. 11.) He testified that at this meeting, Nunez-Polanco told him that he wanted to attempt to qualify for the safety valve. (Hr'g Tr. 136–37.) Garnett counseled Nunez-Polanco not to lie at the proffer. (Hr'g Tr. 124–25.) Nonetheless, Nunez-Polanco did not at that time inform Garnett of the true extent of his participation in the narcotics conspiracy. (Hr'g Tr. 126–28.) In light of this evidence, the Court finds that Garnett's counseling of petitioner regarding safety valve relief fell well within the bounds of objective reasonableness.

Moreover, although Nunez-Polanco argues that Garnett should have requested an opportunity for him to correct the false statements he made at the safety valve proffer and attempt to re-qualify (Am. Pet. 13), the Court finds that Garnett did not act unreasonably by not doing so. It is unclear to the Court whether Garnett was aware that Nunez-Polanco

11

could have attempted safety valve relief a second time (*see* Hr'g Tr. 197), but the testimony is clear that the government expressed no interest in holding another proffer session (Hr'g Tr. 129). Further, Garnett likely had no reason to believe that Nunez-Polanco could provide any more information than he had already given at the first proffer, as his client still had not informed him that he had actually packaged drugs inside the apartment. (Hr'g Tr. 129.) In effect, Nunez-Polanco's lack of honesty with his own attorney prevented Garnett from counseling him to disclose information that Garnett was totally unaware of at the time; consequently, Garnett did not act unreasonably by not requesting another proffer session.

Finally, Nunez-Polanco has not demonstrated that he suffered prejudice as a result of Garnett's allegedly deficient counseling regarding the safety valve. At a minimum, the Court explained the safety valve process at the October 12 conference that Nunez-Polanco attended. (Oct. 12, 2012 Conf. Tr. 6–7.) Indeed, Nunez-Polanco admitted that he heard the Court state that in order to qualify for safety valve relief, the defendant must "truthfully provide[] all information he has concerning the offenses that were part of the same course of conduct or common scheme or plan . . . ." (Hr'g Tr. 51.) Petitioner also conceded that, after attending the October 12 conference, he understood that if he maintained his innocence of the charges during the safety valve proffer, the government would not find him truthful. (Hr'g Tr. 52.) Moreover, the AUSAs warned Nunez-Polanco to tell the truth at the safety valve proffer session. (Hr'g Tr. 127; Gov't Ex. 14.) Yet despite the fact that he understood the consequences of lying, Nunez-Polanco chose at best to provide half-truths to the government at the proffer session. Because petitioner was likely aware of the truthfulness prerequisite to safety valve relief even absent counseling by his attorney, he cannot show that he suffered prejudice.

### III. CONCLUSION

Nunez-Polanco has not shown that Garnett's representation was objectively unreasonable with respect to any of the five bases for relief that he has alleged. Moreover, even if he could show that Garnett's performance met *Strickland's* objective unreasonableness requirement, petitioner has not demonstrated that he suffered prejudice as a result.

Consequently, Nunez-Polanco's motion is denied. Because he has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962).

Dated: New York, New York
       May 20, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.